UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| KAREN DELLINGER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 09-310-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*     \*\*\*     \*\*\*     \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Karen Dellinger and Defendant Michael J. Astrue, Commissioner of Social Security (the Commissioner) [Record Nos. 9, 10]. Dellinger argues that the administrative law judge (ALJ) erred in finding that she is not disabled. She seeks to have this matter remanded for an award of benefits or for further proceedings. However, the Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed. For the reasons discussed below, the Court will grant Dellinger's motion for remand and deny the relief requested by the Commissioner.

**I.**

Dellinger filed an application for Supplemental Security Income (SSI) on August 24, 2006. She alleged disability beginning January 1, 2005. [Tr., p. 52-53] Dellinger's claim was denied initially and upon reconsideration. [Tr., p. 31, 38] An administrative hearing was held

before ALJ Timothy G. Keller in Lexington, Kentucky, on April 1, 2008. Dellinger's attorney, Paul Guthrie, and vocational expert (VE), Martha Goss, attended the administrative hearing. [Tr., p. 157] On July 22, 2008, ALJ Keller issued his decision finding that Dellinger was not disabled under section 1614(a)(3)(A) of the Social Security Act and thus not entitled to SSI. [Tr., p. 18]

Dellinger was forty-three years old at the time of the administrative hearing. She has a high school education and has completed training to be a certified nursing assistant. [Tr., p. 62] In 2005 and 2006, Dellinger attended a technical college in Georgia where she took accounting and computer classes. [Tr., p. 160] Dellinger received a certification in some computer classes but did not complete her accounting degree. [Tr., p. 161] She has work experience as a candy packager, sewing machine operator, housekeeper, and nursing assistant. [Tr., p. 58, 65-69] Dellinger alleges disability due to asthma, chronic obstructive pulmonary disease (COPD), emphysema, and high blood pressure. [Tr., p. 57] After reviewing the record and the testimony presented during the administrative hearing, the ALJ concluded that Dellinger suffers from the severe impairments of asthma and obesity. [Tr., p. 16] However, notwithstanding these impairments, ALJ Keller found that Dellinger retained the residual functional capacity (RFC):

> to perform light work . . . except light work that requires standing or walking for more than two hours per day. In addition, the claimant is precluded from climbing ladders, ropes, and scaffolds and limited to climbing ramps and stairs on no more than an occasional basis. In addition, the claimant's capacity for light work is limited by an inability to stoop, kneel, or crawl on more than an occasional basis and an inability to be exposed to moving machinery, unprotected heights, dust, fumes, gases, temperature extremes, and humidity on more than a minimal basis.

[Tr., p. 16-17] As a result of this assessment, Dellinger was denied SSI. [Tr., p. 18]

## II.

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)); *see also* 20 C.F.R. § 416.920(a)(4). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

First, the claimant must demonstrate that she is not currently engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 416.920(b). Second, the claimant must show that she suffers from a severe impairment or combination of impairments. 20 C.F.R. § 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 416.920(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's residual functional capacity and relevant past work to determine whether she can do past work. If she can, she is not disabled. 20 C.F.R. § 416.920(f).

Under the fifth step of the analysis, if the claimant's impairment prevents her from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether she can perform other work. If she cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d

-4-

1230, 1233 (6th Cir. 1993). Thus, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

## III.

Dellinger argues that the ALJ erred in evaluating her obesity because he failed to consider its impact on her other impairments. Specifically, she asserts that ALJ Keller did not follow procedures set forth in Social Security Ruling 02-1p for evaluation of obesity. Dellinger also maintains that the ALJ should have found her sleep apnea to be a severe impairment.[1] Finally, Dellinger contends that the ALJ's finding that she could perform her past work as a sewing machine operator was erroneous. However, last contention is rendered moot by the Court's resolution of Dellinger's first argument.

### A.       Social Security Ruling 02-1p

Dellinger complains that the ALJ "failed to follow the procedures set out in SSR 02-1p[,] which sets forth the requirements for evaluating obesity." [Record No. 9, p. 4 (footnote omitted)] Her assertion that Social Security Ruling 02-1p establishes procedures for evaluating obesity is inaccurate. The Sixth Circuit has called it "a mischaracterization to suggest that Social Security Ruling 02-01p offers any particular procedural mode of analysis for obese disability claimants." *Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir. 2006). The ruling "does not mandate a

---

1       Dellinger also asserts that "there exists new and material evidence that requires either a favorable decision be issued or the matter remanded for further consideration by the [ALJ]." [Record No. 9, p. 4] It is unclear to what "evidence" this assertion refers. Dellinger later states, "[i]t is important to note that subsequent to the Appeals Council denial that [sic] the Plaintiff received a favorable administrative decision based on these same impairments." [Record No. 9, p. 6] Dellinger does not connect this statement to her earlier mention of "new and material evidence," however, and no copy of the subsequent decision is attached to her brief. In any event, a later favorable decision does not, by itself, constitute new and material evidence warranting remand. *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 653 (6th Cir. 2009).

particular mode of analysis.  It only states that obesity, in combination with other impairments, 'may' increase the severity of the other limitations." *Id.* at 411-12.  Thus, Dellinger's contention on this point is unavailing.

### B.       Consideration of Dellinger's Sleep Apnea

Dellinger's mischaracterization of the Social Security Ruling is not fatal to her argument because the Court agrees that the ALJ failed to give sufficient consideration to her sleep apnea. While SSR 02-1p does not prescribe a specific procedure for evaluation of obesity, it does make clear that sleep apnea is an effect of obesity and thus should be considered "not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity."  Soc. Sec. Rul. 02-1p (Sept. 12, 2002).

There is no indication that the ALJ considered SSR 02-1p in reaching his conclusion that Dellinger was not disabled.  More importantly, it appears that he did not give sufficient consideration to Dellinger's sleep apnea and whether it constituted a severe impairment.  The sole mention of sleep apnea in the ALJ's decision was his finding that "[a]lthough it is clear from the record that the claimant experiences sleep apnea and high blood pressure, there is insufficient evidence to establish that either of those impairments impinge[s] upon the claimant's ability to perform work-related activities in any way."  [Tr., p. 16]  As a result of this finding, the ALJ concluded that Dellinger's sleep apnea and high blood pressure did not constitute severe impairments.  [*Id.*]

Yet the record contains numerous references to Dellinger's sleep apnea and its possible effects on her ability to work.  Dellinger stated on several occasions that she has difficulty staying awake during the day.  [*See, e.g.*, Tr., p. 57, 88-89, 160]  Her sleep apnea was diagnosed by multiple physicians, including Dr. James Owen, who performed a consultative examination of Dellinger in October 2006 and noted that she suffered from sleep apnea and "daytime sleepiness." [Tr., p. 97]  A primary diagnosis of massive obesity and OSA, or obstructive sleep apnea, formed part of the basis for a Physical Residual Functional Capacity Assessment completed by Dr. Robert Brown in May 2007.[2] [Tr., p. 103-11]  Moreover, Dellinger testified during the administrative hearing that she stopped taking classes prior to completion of her accounting degree partly because she "couldn't stay awake during classes."  [Tr., p. 160]  Dellinger explained, "I'd be sitting in class and just fall asleep and it got to be a problem with my instructor."  [*Id.*]  This testimony was consistent with Dellinger's earlier complaints regarding her inability to remain awake.  [*See* Tr., p. 57, 88-89]

Dellinger's statements regarding her symptoms suggest that her sleep apnea may be a severe impairment, since, as she notes in her brief, the inability to stay awake or concentrate during the day would significantly limit one's ability to work. [Record No. 9, p. 4-5]  A claimant's subjective assessment of her symptoms "can support a claim of disability, if there is also objective medical evidence of an underlying medical condition in the record."  *Jones*, 336 F.3d at 475.  Here, as the ALJ acknowledged, the medical evidence clearly showed that Dellinger suffered from sleep apnea.  [*See* Tr., p. 16]  The reports of Dr. Owen and others

---

[2]     The ALJ stated that he gave "substantial probative weight" to the opinions of Dr. Owen and Dr. Brown.  [Tr., p. 18]

"suppl[y] the requisite objective medical condition to support" Dellinger's claim of disability due to her sleep apnea. *Jones*, 336 F.3d at 475.

Once a medical basis for Dellinger's subjective complaints had been established, "the ALJ was required to go further and determine the actual intensity and persistence of [her] symptoms and how these symptoms limit [her] ability to work." *Allen*, 561 F.3d at 652. In making this determination, an ALJ may properly consider the credibility of any statements by the claimant as to her symptoms, and this credibility determination is entitled to great deference by the reviewing court. *Jones*, 336 F.3d at 476. However, the ALJ must explain his reasons for discrediting the claimant, and this explanation must be "reasonable and supported by substantial evidence in the record." *Id.*

ALJ Keller found that Dellinger's "statements concerning the intensity, persistence[,] and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below." [Tr., p. 17] The ALJ then observed that there was medical evidence in the record that he found to be "[s]omewhat consistent with the allegations of the claimant" regarding her "limited motion, edema, and shortness of breath associated with obesity and asthma." [*Id.*] He further noted that Dellinger's "diagnosis of severe and chronic asthma was confirmed by a pulmonary function study in 2006." [*Id.*] The ALJ next discussed Dr. Owen's October 2006 findings with regard to Dellinger's range of motion and the extent of the limitations "to her abilities to lift, handle, and carry objects" and "to hear, speak, see, and travel." [*Id.*] ALJ Keller then turned to Dr. Brown's May 2007 evaluation of the record and stated, mistakenly, that Dr. Brown had "diagnosed the

-8-

claimant with massive obesity and asthma," a diagnosis the ALJ found to be "[c]onsistent with the weight of the limited record of treatment in this case." [*Id.*] In fact, the RFC assessed by Dr. Brown was based on a primary diagnosis of massive obesity and "OSA" — obstructive sleep apnea. [Tr., p. 103-11]

> Finally, ALJ Keller observed,
>
> Although his [sic] obesity and asthma were considered in reaching the conclusions in this decision, it is noted that the claimant attended college courses in 2005 and 2006 before moving to Kentucky with her boyfriend. The [ALJ] finds that such evidence contradicts the claimant's allegations that she is able to walk no more than a few feet at a time or to sit for no more than thirty minutes at a time.

[Tr., p. 18] Yet Dellinger specifically testified that the reason she stopped taking classes in August 2006 — the same month she filed her claim for SSI — was that she "couldn't walk from class to class and . . . couldn't stay awake during classes."[3] [Tr., p. 160] Thus, to the extent the ALJ found Dellinger's claims of disability not credible based on her enrollment in college classes in 2005 and 2006, the Court finds that his credibility determination is not reasonable or supported by substantial evidence. *See Jones*, 336 F.3d at 476.

It is unclear whether the ALJ's credibility determination included Dellinger's statements about her sleep apnea symptoms. If it did, the ALJ failed to adequately explain why he discredited these statements. *See id.* However, it does not appear that ALJ Keller even attempted to determine the intensity and persistence of Dellinger's sleep apnea symptoms and

---

3        In Dellinger's explanation of her reasons for dropping out of school, she did not mention that she had difficulty remaining seated for more than thirty minutes at a time due to stiffness in her legs, a complaint she made later in the hearing. [*See* Tr., p. 160, 165] This is likely the complaint to which ALJ Keller referred in his credibility determination. However, Dellinger stated on several occasions that she was unable to sit still without falling asleep. [*See* Tr., p. 57, 88-89, 160]

how they might affect her ability to work.  For example, when Dellinger testified at the hearing that she was forced to drop out of school in part because she was unable to stay awake during classes, the ALJ did not explore the connection between Dellinger's inability to stay awake and her sleep apnea, but instead embarked on a line of questioning regarding the types of classes she had been taking.  [Tr., p. 160-61]  The ALJ's decision is likewise devoid of any indication that he considered Dellinger's statements concerning her sleep apnea symptoms, despite the fact that these statements were consistent with the medical opinions to which he gave "substantial probative weight."  [Tr., p. 18; *see* Tr., p. 97-99, 103-11]  The statements should have been considered throughout the ALJ's analysis, as they related to a condition that was an effect of Dellinger's obesity.  *See* Soc. Sec. Rul. 02-1p.

The ALJ's lack of discussion regarding Dellinger's sleep apnea may have resulted from a misreading of Dr. Brown's RFC assessment.  As noted above, ALJ Keller stated that the agency physician had made a primary diagnosis of massive obesity and asthma, when in fact Dr. Brown diagnosed obesity and obstructive sleep apnea.  [*See* Tr., p. 17, 103]  This apparent mistake, combined with the ALJ's extremely limited discussion of Dellinger's sleep apnea despite having purportedly given Dr. Brown's report substantial weight, further convince the Court that remand is appropriate.

### C.    Combination of Impairments

It also appears that the ALJ failed to consider Dellinger's obesity in combination with her other impairments, particularly her sleep apnea.  The Sixth Circuit has held that "[a]n ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect

of the impairments in combination, where the ALJ specifically refers to a 'combination of impairments' in finding that the plaintiff does not meet the listings." *Loy v. Sec'y of Health & Human Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990) (citing *Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987)). The ALJ made a finding of fact that Dellinger "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in [the applicable regulations]." [Tr., p. 16] No discussion followed this finding. [*See id.*] While the ALJ did acknowledge Dellinger's sleep apnea earlier in the decision, his discussion of this impairment was limited to a conclusory finding that there was "insufficient evidence" that it limited her ability to work and that it was not a severe impairment. [Tr., p. 16] The ALJ's fleeting mention of Dellinger's sleep apnea — merely to summarily dismiss it as not severe — does not constitute an "individual discussion" and does not satisfy the Court that the ALJ gave sufficient consideration to this impairment and how it affects Dellinger's ability to work, alone or in combination with her other impairments.

## IV.

In summary, the Court does not find that Dellinger is disabled, or that her sleep apnea is a severe impairment. Rather, the Court concludes that the ALJ's decision does not reflect that he gave adequate consideration to Dellinger's sleep apnea and how it affects her ability to work. The ALJ did not sufficiently explain either his preliminary finding that Dellinger's sleep apnea was not a severe impairment or his ultimate conclusion that Dellinger was not disabled. In other words, the ALJ's decision is not supported by substantial evidence. As a result, the matter will be remanded for further consideration of these issues. Accordingly, it is hereby

-11-

**ORDERED** as follows:

(1)     Plaintiff Karen Dellinger's motion for summary judgment [Record No. 9] is **GRANTED** to the extent she seeks remand.  To the extent she seeks an order awarding benefits based on the current state of the record, her motion is **DENIED**.

(2)     Defendant Commissioner Michael Astrue's motion for summary judgment [Record No. 10] is **DENIED**.

(3)     The decision of Administrative Law Judge Timothy Keller is **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

This 1st day of March, 2010.

Signed By:

*Danny C. Reeves*  DCR

United States District Judge